*EEE, J.
Whether Campbell Tarr is to be regarded as having purchased the interests of the legatees of Barbara McGuire, now claimed by him, on his own account and for his own benefit, or as agent of his father William Tarr, and for the use and benefit of the latter, it was not improper he should be made a party in the case of Rebecca Ravenscroft, the object of which was to obtain a settlement of the estate of Barbara McGuire, and a decree for payment of the various legacies left by her will. Campbell Tarr had taken the assignments of the different legacies purchased in by him to himself in his own name, and was claiming them for his own use; and it appears that in making these purchases he had spent some time and labor, and had incurred various charges and expenses. It was right, therefore, that his claim to the legacies should be adjudicated, and that he should be bound by the decision ; and if it should be held that the purchases were in fact for the benefit of his father, and that he held the assignments as trustee merely, still he could not be required to surrender them for the benefit of other persons except upon being reimbursed for his time, labor and expenses. It was therefore proper that he should be a party in this cause, so that the whole matter might be finally adjudicated, and the bill should not have been dismissed as to him when the case was heard and the reference directed.
It is clear that it was proper for William Tarr to convene the representatives of the personal and real estate of John Hendricks, by cross bill before the court, for the purpose of charging upon the real estate the amount for which it was properly responsible by reason of the cosuretyship of Hendricks with William Tarr in the administration bonds given by James and Robert Marshel as administrators of Francis McGuire and Barbara McGuire. Hendricks, by the mortgage of the 18th of December 1843, had charged his land *with reimbursement to William Tarr of one-half of all he might have paid as such surety; and by his will he had in effect charged all his estate with the payment of his proportion of any deficiency that might be made to appear upon the settlement of the administration accounts. This provision of course enured to the benefit of William Tarr, and his right therefore to come with his cross bill is beyond all doubt. Nor was there any impropriety in Campbell Tarr’s being joined with him as a complainant. Campbell Tarr had purchased the legacies and taken the assignments to himself in his own name. He claimed to have purchased them for his own use and benefit., This claim was recognized and acknowledged by William Tarr. Thus Campbell Tarr was apparently concerned in the proper disposition of the proceeds of the real estate of John Hendricks; and if others were interested to show that the purchases were in fact for the use and benefit of William Tarr, still Campbell Tarr might claim indemnity for his services and expenses in obtaining the assignments as the condition of his surrendering them for the benefit of those entitled. And having thus an interest in the subject, it was proper he should be a party. Story’s Eq. Plead. £ 72, £ 153, and n. 3, £ 154; 1 Dan. Ch. Pr. 284, 291. The same reason therefore which forbade the dismissal of the original bill as to Campbell Tarr, applied also to the case of the cross bill of William and Campbell Tarr; but there was still another reason which rendered the dismissal of the latter, for the cause assigned, improper at the hearing. The administrators of Hendricks had in their answer to the original bill insisted that Campbell Tarr should not be allowed to recover any thing by reason of the supposed assignments of the legacies to him, nor William Tarr to recover any thing by reason of any payments to Campbell Tarr as such assignee, without first filingtheir bill against the representatives *of John Hendricks, and alleging and proving the assignments and giving the administrators an opportunity to contest them; and when the cross bill was after-wards filed, setting up the assignments, *752 neither they nor any other of the representatives of John Hendricks made any objection for such supposed misjoinder by demurrer, plea or otherwise. The administrators of Hendricks answered, and the cause came on for final hearing' on the merits. The objection not having been made in due time and in the proper form, should at this stage have been disregarded. 1 Dan. Ch. Pr. 399, 401; Story’s Eq. Plead. § 544. Raffity v. King, 1 Keen’s R. 601; Trustees of Watertown v. Cowen, 4 Paige’s R. 510; Dickenson v. Davis, 2 Leigh 401.
Upon the merits, I think there is as little room for doubt or difficulty.
Campbell Tarr was the son of William Tarr, and in his employment or engaged with him in business as a junior partner. He was, so far as appears, without means, except such as he derived from his father. The money ' with which the purchases of the legacies were made was supplied by his father, and the enterprise of hunting up the legatees and obtaining their assignments was undertaken at his suggestion. The idea that the money used by Campbell Tarr in making the purchases was loaned him by his father, is not supported by any competent testimony, but is repelled by the circumstances disclosed. In making the purchases Campbell Tarr appears to have had constant reference to his father, and speaks of it as his father’s business. He also speaks of the hardship of the case upon both of the securities, and states his object in making the purchases to be to save them •as far as possible; and he uses this as an argument with the legatees why they should ■consent to an abatement of the amount due them; and the argument appears to have been successful. Looking to all the circumstances in proof, *the concert of purpose between William Tarr and Campbell Tarr is plainly apparent. That the latter was the mere agent of the former in making the purchases is, I think, beyond any reasonable doubt or question, and as such, for all the purposes of these causes, he must be regarded. The assignments being in his name, he is to be regarded as holding them in trust for his father, and for those, if any, who may be entitled to participate with him in the benefits of them, subject only to the right to demand a reasonable compensation for his services, and reimbursement of his expenses incurred in obtaining the assignments.
, Regarding the purchases of these legacies as in fact made for William Tarr, the claim of the representatives of Hendricks to participate in the benefit of them cannot be successfully resisted. The doctrine of contribution among sureties is founded rather on principles of equity and natural justice than upon any notion of mutual contract, expréss or implied. Dering v. Earl of Winchelsea, 1 Cox R. 318; Craythorne v. Swinburne, 14 Ves. R. 160; per Lord Redesdale in Stirling v. Forrester, 3 Bligh’s R. 575, 590. It is true it may be enforced at law, although no positive contract between the .sureties can be shown, but the principle and the measure of relief afforded in the court of equity are different from those of the law courts. Thus, if one of several sureties be insolvent, and another pays the debt, he can at law recover from the other solvent sureties only their original quotas without regard to the share of the insolvent surety. Cowell v. Edwards, 2 Bos. & Pul. 268; Brown v. Lee, 6 Barn. & Cress. 697; S. C. 9 Dow. & Ryl. 700. But in equity the share of the insolvent surety will be apportioned amongst those who are solvent. Hale v. Harrison, 1 Cas. in Ch. 246; Dering v. Earl of Winchelsea, 1 Cox R. 318; Peter v. Rich, 1 Ch. Rep. 34. So if one surety die, the remedy at law lay only *against the survivors; but a court of equity would compel contribution from the estate of the deceased surety. Primrose v. Bromley, 1 Atk. R. 89.
Sureties are not only entitled to contribution as between themselves personally, for moneys paid in discharge of the common debt, but they may also claim the benefit of all securities which any one of their number majr have taken for his indemnity: And if a surety who seeks contribution has been reimbursed part of what he has paid, either by the debtor himself, or through a counter security, or from any source, he must give credit for the amount reimbursed, and can only claim contribution for the balance. Knight v. Hughes, 3 Carr & Payne 467; Swain v. Wall, 1 Ch. Rep. 80; 1 Story’s Eq. Jur. § 499; Theobald on Prin. and Sur. ch. 11, § 283, p. 267.
Erom these principles it follows, I think, as a necessary corollary, that if one surety purchases in the common debt for less than its nominal amount, he can only claim contribution of a cosurety for the amount actually paid by him. If it be unjust that one surety should bear the whole burden of a demand to which another, in common with him, has made himself equally liable, and from the payment of which he has derived an equal benefit, so it would be unjust to compel the latter to sustain more than his just and equal share of the necessary loss. The object of the whole doctrine is equity, and equality of burdens is equity.
In Blow v. Maynard, 2 Leigh 29, it was held that where a surety for a guardian compromised with- the ward for a less sum than was actually due on a settlement of the guardian’s account, he could only demand indemnity from the guardian’s estate in equity, for the money actually paid to the ward in satisfaction of her claim. A for-tiori, it should seem he could not demand contribution of a cosurety except for the amount thus actually paid. If the principal be only liable for *the amount actually paid by a surety in discharge of the debt, then he could only be liable to any other surety for his quota of that amount; and if the latter could be called on for contribution according to the nominal amount of the debt, .he would thus be liable to his cosurety for a greater amount than he could recover of the common principal.
I think, therefore, the estate of Hen *753 dricks was only liable to reimburse one moiety of the amount actually paid by William Tarr for the legacies purchased in by him or bj- Campbell Tarr for him, and one-half of what would be a just compensation to Campbell Tarr for his time and services and necessary expenses in looking1 up the legatees and obtaining their assignments.
I am of opinion to reverse the decree, and remand the causes for further proceedings.
The other judges concurred in the opinion ■of Dee, J.
Decree reversed.